# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

CHAMBERS OF
**MICHAEL A. SHIPP**
UNITED STATES MAGISTRATE JUDGE

MARTIN LUTHER KING COURTHOUSE
50 WALNUT ST.   ROOM 2042
NEWARK, NJ 07102
973-645-3827

<u>Not for Publication</u>

## LETTER OPINION AND ORDER

April 29, 2011

**VIA CM/ECF**
All counsel of record

> Re:   **Marketvision/Gateway Research, Inc., et al. v. Priority Pay Payroll, LLC, et al.**
> **Civil Action No. 10-1537 (SRC) (MAS)**

Dear Counsel:

This matter comes before the Court by way of Plaintiffs Marketvision/Gateway Research, Inc. and Marketvision/Gateway Research of California, Inc.'s (collectively, "Plaintiffs") application for leave to file and serve an Amended Verified Complaint.  (Docket Entry Number ("Doc. No.") 37-2 ("Pls.' Moving Br.").)  Defendant Jerry Carter ("Carter" or "Defendant") opposes Plaintiffs' motion.  (Doc. No. 41 ("Def.'s Opp'n Br.").)

For the reasons set forth below, Plaintiffs' motion for leave to file and serve an Amended Verified Complaint is granted.

## I.   <u>STATEMENT OF FACTS</u>

As the parties are well versed in the facts underlying this matter, the Court will address only those facts relevant to the motion currently pending before this Court.  This matter pertains to Plaintiffs' allegations that Carter and Defendant Priority Pay Payroll, LLC ("Priority Pay")[1] (collectively, "Defendants") failed to comply with a Payroll and Tax Impounding Agreement

---

[1] Priority Pay filed a voluntary petition for bankruptcy, which is currently pending before the Bankruptcy Court for the District of New Jersey, Case Number 10-20324.  Accordingly, the proceedings against Priority Pay are automatically stayed pending resolution of same.

("Agreement") entered into between Plaintiffs and Priority Pay where, amongst other things, Priority Pay was to provide payroll services, make timely tax filings and tax deposits and handle direct deposits for Plaintiffs.  (Doc. No. 1 ("Verified Compl.") ¶¶ 9-13.)  The Agreement also grants Priority Pay limited power of attorney.  (*Id.* at ¶ 13.)  In the Verified Complaint, Plaintiffs assert that Defendants failed to properly file Plaintiffs' taxes, failed to notify Plaintiffs that Priority Pay's Vice President of Operations had embezzled tax funds and improperly continued to impound funds without notifying Plaintiffs of the deficiencies and violations of the Agreement. (*See generally id.*)

On July 28, 2010, this Court granted Carter's motion to dismiss and granted Plaintiffs permission to file a renewed motion to amend the Verified Complaint.  (Doc. No. 35.)  With regard to Plaintiffs' claims that rely upon a piercing of the corporate veil theory, or Counts II, IV, VI and VIII, the Court held that Plaintiffs' initial proposed Amended Verified Complaint failed to set forth factual assertions to support the legal conclusions.  (Doc. No. 36 ("Tr.") 9:7-10:22.) With regard to Plaintiffs' fraud claims against Carter under Count V,[2] the Court noted that there were two bases to assert fraud: affirmative misrepresentations and nondisclosure.  (*Id.* at 20:23-21:1.)  To successfully demonstrate nondisclosure fraud, the Court explained that Plaintiffs are required to demonstrate "that there's . . . a legal obligation to in fact disclose, as opposed to false representations which, assuming all other elements of fraud exist, are actionable."  (*Id.* at 21:2-6.)  Material representations, on the other hand, require demonstration that a party misrepresented "an existing fact with intent that it be relied upon, that it's material, that it's relied upon to the detriment of the plaintiff and that the plaintiff suffers damages as a result." (*Id.* at 21:16-19.)  Thus, for purposes of surviving a motion to dismiss, the Court noted that

---

[2] All remaining claims were filed specifically against Priority Pay and, as such, are stayed pending resolution of the bankruptcy proceedings.

Plaintiff needed to add sufficient facts to support the legal conclusion that Plaintiffs had suffered damages after the alleged fraudulent, material representations were made (*Id.* at 22:22-23:3) or otherwise demonstrate that Carter had an obligation to disclose the embezzlement or misconduct to Plaintiffs, because "the complaint[,] as it's currently drafted does not adequately plead facts which support a New Jersey cause of action for common law fraud." (*See id.* at 23:9-12, 24:18-25:6, 25:17-20.)

Accordingly, Plaintiffs filed the motion currently pending before this Court, seeking to add factual allegations against Carter, which allegedly support the fraud and conversion claims, as well as their piercing of the corporate veil theory. (Pls.' Moving Br. 1-2; *see generally* Doc. No. 37-1 ("Katcoff Decl.") Ex. A ("Proposed Amend. Compl.").)

## II.    <u>LEGAL STANDARD & ANALYSIS</u>

Under the Federal Rules of Civil Procedure, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The decision as to whether leave to amend a complaint should be granted "is a matter committed to the sound discretion of the district court." *Arab African Int'l Bank v. Epstein*, 10 F.3d 168, 174 (3d Cir. 1993). The Third Circuit has adopted a particularly liberal approach in favor of permitting pleading amendments so as to ensure that "a particular claim will be decided on the merits rather than on technicalities." *Dole v. Arco Chem. Co.*, 921 F.2d 484, 487 (3d Cir. 1990). Thus, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

However, leave to amend a pleading may be denied if the Court finds: (1) undue delay; (2) bad faith or dilatory motive; (3) undue prejudice to the non-moving party; or (4) futility of

the amendment.  *Id.*; *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000).  Notably, if a complaint is vulnerable to dismissal for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") or futility grounds, and a party moves to amend the complaint, "leave to amend generally must be granted unless the amendment would not cure the deficiency." *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000).  In assessing whether any deficiency has been cured, a court must consider whether the amended complaint would "survive a motion to dismiss for failure to state a claim[,]" under the applicable Rule 12(b)(6) standard.  *Keller v. Schering-Plough, Corp.*, No. 04-669, 2007 U.S. Dist. LEXIS 75318, at *7 (D.N.J. Oct. 9. 2007) (citing *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002)); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).  Importantly, the Court must "accept as true all of the factual allegations in the [proposed amended] complaint as well as the reasonable inferences that can be drawn from them[,]" when conducting its futility analysis.  *Brown v. Philip Morris Inc.*, 250 F.3d 789, 796 (3d Cir. 2001) (citing *Moore v. Tartler,* 986 F.2d 682, 685 (3d Cir. 1993)).

When asserting that an amended complaint would or would not survive a Rule 12(b)(6) motion to dismiss, the parties are not required "to engage in the equivalent of substantive motion practice upon the proposed new claim . . . ; [instead,] the newly asserted [claims must] appear to be sufficiently well-grounded in fact or law that it is not a frivolous pursuit." *Harrison Beverage Co. v. Dribeck Imp., Inc.*, 133 F.R.D. 463, 468 (D.N.J. 1990).  Stated differently, the proposed amended complaint does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face" or that otherwise "raise[s] a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).  Certainly, mere legal conclusions or naked assertions without factual support will not enjoy a

presumption of truth and, thus, will not survive a Rule 12(b)(6) motion to dismiss.  *Id.* at 555-56;

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

However, the aforementioned plausibility standard "does not impose a probability

requirement at the pleading stage; it simply calls for enough facts to raise a reasonable

expectation that discovery will reveal evidence . . . ." of the requisite elements.  *Bell Atl. Corp.*,

550 U.S. at 546, 556.   Notably, "a well-pleaded complaint may proceed even if it strikes a savvy

judge that actual proof of those facts is improbable, and 'that a recovery is very remote and

unlikely.'"  *Id.*  Thus, a claim will be considered facially plausible when a party "pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it

asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft*, 129 S. Ct.

1949 (internal citations omitted).   Indeed, in determining whether claims are plausible and

would survive a Rule 12(b)(6) motion to dismiss, this Court has reasoned:

> First, courts exercise discretion that permits the pleading standards to be adapted
> to the circumstances at hand. When determining whether a claim is "plausible,"
> district courts are not bound by a rigid code-pleading regime requiring a plaintiff
> to recite the magic words or plead every element of a claim, but instead the courts
> rely on "judicial experience and common sense" applied to the particular
> circumstances of the case at hand.  Courts determine what inferences can be
> reasonably drawn from circumstantial facts, and also what degree, depending on
> the case, other factual possibilities must be ruled out in order to make legal
> liability plausible.  Often, the very same circumstantial evidence that leads a
> plaintiff to believe that a defendant is in control of the relevant direct evidence
> forms the basis of reasonable inferences supporting a plausible claim.
>
> Second, a party need not have evidentiary support in order to allege a fact in the
> Complaint.  A plaintiff may allege a fact when to the "best of the person's
> knowledge, information, and belief," there is reason to believe that discovery
> would "likely" find evidence for the fact.  While something more than a mere
> hunch or guess is needed, the requirement is also not one necessitating
> evidentiary support prior to discovery.

> Thus, far from requiring that a plaintiff be in possession of the relevant evidence in order to plead a claim, a plaintiff need only have some good reasons-even if circumstantial and inferential-for believing that the defendant has engaged in some identifiable legal wrong, sufficient to convince the Court of the claim's plausibility in light of the other possible scenarios that are consistent with the facts alleged.

*Top v. Ocean Petroleum, LLC*, No. 10-1042, 2010 WL 3087385, at *4 (D.N.J. Aug. 3, 2010) (internal citations omitted).

As this Court has previously noted that Plaintiffs' Verified Complaint fails to set forth factual allegations to support its piercing the corporate veil claims, as well as its fraud claims, the Court shall now address and analyze each issue below, consistent with the aforementioned legal standard.

### A.   Counts II, IV, VI and VIII – Piercing the Corporate Veil Claims

As mentioned above, this Court granted Defendant's motion to dismiss Counts II, IV, VI and VIII of the Verified Complaint, based on Plaintiffs' failure to set forth factual allegations to support the legal conclusions asserted therein, which rest on a piercing of the corporate veil theory.  Since this matter comes before the Court pursuant to diversity jurisdiction, New Jersey law applies to all asserted state law claims.  *See Craig v. Lake Asbestos of Quebec, Ltd.*, 843 F.2d 145, 149 (3d Cir. 1988).

In order to pierce the corporate veil, a party must demonstrate "such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist" and that treating the corporation as a separate entity or existence would essentially "sanction a fraud or promote injustice."  *State Capital Title & Abstract Co. v. Pappas Bus. Serv., Inc.*, 646 F. Supp. 2d 668, 679 (D.N.J. 2009); *Trs. of the Nat'l Elevator Indus. v. Lutyk*, 332 F.3d 188, 194 (3d Cir. 2003).  However, it is not enough to only allege that an officer had dominion or control over the corporation, rather, the party must demonstrate that the dominant party or officer abused

6

the privilege of being incorporated by way of perpetrating a fraud or injustice. *State Capital Title & Abstract Co.*, 646 F. Supp. 2d at 679; *State Dept. of Envtl. Prot. v. Bentron Corp.*, 94 N.J. 473, 500 (1983). Specifically, to properly demonstrate that a corporate veil has been pierced, the asserting party must demonstrate that the individual or parent company has or had "complete domination, not only of finances but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own" and that such dominion or control was exercised to a substantial degree. *Craig*, 843 F.2d at 150. Notably, "[t]he issue of whether the corporate veil . . . can be pierced is primarily a question of fact . . . [and whether a party has] alleged sufficient facts to state a claim and should [, therefore,] be permitted to proceed with discovery to further develop the factual record." *Prime Capital Grp., Inc. v. Klein*, No. 07-414, 2008 U.S. Dist. LEXIS 58771, at * 29  (D.N.J. July 28, 2008) (citing *Melikian v. Corradetti*, 791 F.2d 274, 282 (3d Cir. 1986)).

In determining whether the corporate veil ought to be pierced, a court will consider such factors as "gross undercapitalization, failure to observe corporate formalities, non-payment of dividends, insolvency of debtor corporation at the time, siphoning of funds . . . by the dominant stockholder . . .  absence of corporate records, and the fact that the corporation is merely a façade for the operations of the dominant stockholder or stockholders." *Craig*, 843 F.2d at 150; *Trs. of the Nat'l Elevator Indus.*, 332 F.3d at 194 (internal citations omitted). Importantly, the Third Circuit stated that while these factors "are not elements of a rigid test[,]" a court must determine, at a minimum, whether the corporation is "little more than a legal fiction." *Trs. of the Nat'l Elevator Indus.*, 332 F.3d at 194 (internal citation omitted) (finding the corporate veil was pierced where the dominant shareholder increased the amount of funds he drew from the corporation for his personal needs, while the corporation plummeted deeper into debt). Also,

7

even if a corporation was formed for lawful purposes, as opposed for the purpose of defrauding others, the corporate veil may be pierced when same corporation eventually perpetrates a fraud. *State Capital Title & Abstract Co.*, 646 F. Supp. 2d at 680.

Here, Plaintiffs assert that since filing the initial Verified Complaint, additional facts have been discovered, which are included in the proposed Amended Verified Complaint and are sufficient to survive a Rule 12(b)(6) motion to dismiss.  (Pls.' Moving Br. 3.)  By way of example, Plaintiffs note that information regarding Priority Pay's finances has been discovered, through the bankruptcy proceedings and interviews of former Priority Pay employees, which relates to Priority Pay's business practices and use of funds.  (*Id.*)  For instance, Plaintiffs argue that the facts set forth in paragraphs 50 through 54 demonstrate that: "(a) Priority Pay was undercapitalized; (b) Priority Pay was insolvent as its liabilities exceeded its assets and it was unable to pay its debts as they came due; and (c) Mr. Carter siphoned off company funds for his own use."  (*Id.* at 4.)  These facts, according to Plaintiffs, support the piercing of the corporate veil theory, because Carter was living "a lavish lifestyle while Priority Pay spiraled deeper and deeper into debt until eventually forced to file bankruptcy."  (*Id.*, citing *Trs. of the Nat'l Elevator Indus.*, 332 F.3d at 188.)

Carter, on the other hand, challenges Plaintiffs' motion on futility grounds, asserting that the proposed Amended Verified Complaint would not survive a motion to dismiss, as it continues to assert mere legal conclusions that are unsupported by any facts.  (Def.'s Opp'n Br. 1, 4-5.)  According to Carter, Plaintiffs have failed to follow the roadmap provided by this Court on the record on July 28, 2010 for curing the deficiencies in Plaintiffs' previous proposed Amended Verified Complaint.  (*Id.* at 1.)  Defendant claims that because Plaintiffs have relied upon information received from unidentified former employees of Priority Pay and Plaintiffs have

failed to include their names or information as to who contacted or interviewed these individuals, that the information is unverified, hearsay and lead to mere speculation and legal conclusions. (*Id.* at 5.)   Similarly, Defendant argues that Plaintiffs have failed to point to any specific financial documents that support the facts related to Priority Pay's financial information or business practices to substantiate claims against Defendant.  (*Id*. at 5-6.)

Specifically, with regard to the claims that rest on a piercing of the corporate veil theory, Defendant argues that Plaintiffs fail to demonstrate that Priority Pay is an alter-ego corporation and improperly rely on unnamed employees' statements to support their claims.  (*Id*. at 1-2.) Carter further notes that this Court previously held that declaration of bankruptcy does not establish that an entity "was undercapitalized and/or insolvent at the time of the circumstances alleged by Plaintiffs."  (*Id.* at 7.)  Other than concluding that Priority Pay is "grossly undercapitalized," Defendant argues, Plaintiffs have failed to set forth factual support that Priority Pay was insolvent at the time it was incorporated, which is necessary to properly assert that the corporate veil should be pierced.  According to Carter, if Priority Pay was adequately capitalized when it was initially formed, a court cannot find that corporate veil has been pierced. (*Id.*, citing *Trs. of the Nat'l Elevator Indus.*, 332 F.3d at 197.)  Carter asserts that this fact is of particular significance in this matter, because Priority Pay would not be in bankruptcy or in its current situation, but for Jose Figueroa's embezzlement of funds.  (*Id.*)  Thus, Carter argues that because the evidence demonstrates that Priority Pay was not insolvent when formed, "[t]here is simply no support whatsoever for Plaintiffs' allegations that Priority [P]ay was a mere façade for Mr. Carter's personal gain or that it was a 'sham company' credited by Mr. Carter with the intent to defraud clients."  (*Id.* at 8, 13.)  Finally, for any claims that assert fraud and rest on a piercing of the corporate veil theory, Defendant also argues that Plaintiffs' failure to draw a causal

connection between the alleged representations and Plaintiffs' losses or damages warrants a finding that Plaintiffs' claims, most particularly the New Jersey Consumer Fraud Act claim under Count VIII, would not survive a motion to dismiss.  (*Id.* at 13-14.)

In response, Plaintiffs assert that Carter's complete disregard of the substantial number of new factual allegations set forth in the proposed Amended Verified Complaint, which are "based on statements taken from former employees of Priority Pay . . . about Carter's misuse of company assets for his own benefit – not only the half million dollars belonging to plaintiffs but a $2.3 million deposit made by ADP that has also vanished[,]" is inappropriate.  (Doc. No. 44 ("Pls.' Reply Br.") 1.)  Plaintiffs note that the fact that former employees who worked with Carter "implicate him in setting company policy and direction, in having exclusive control over the accounts from which the funds disappeared as well as having routinely siphoned company funds for personal use[,]" certainly warrants granting Plaintiffs' motion.  (*Id.*)  Moreover, Plaintiffs argue:

> Carter's fluctuating and patently false explanations about the whereabouts of Marketvision's money (which disappeared at the time Carter purchased a million dollar home) and other missing assets and his inability in this proceeding and in the Priority [Pay] bankruptcy to give any explanation about the fate of these assets underscore his involvement in hiding them and in exercising unauthorized dominion over them.

(*Id.*)  Thus, Plaintiffs assert that based on these factual allegations, common sense dictates that it is certainly plausible that Defendant "is responsible for the disappearance of Marketvision's money," which warrants granting its motion to amend.  (*Id.*)

Indeed, under the relevant legal standard, Plaintiffs assert, the plausibility threshold standard is "somewhat low" and does not eliminate the use or assertion of facts based upon the "information and belief" of a party, as otherwise asserted by Carter.  (*Id.* at 3.)  Plaintiffs note that the plausibility standard has been explained specifically as not preventing a party from

"pleading facts alleged 'upon information and belief' where the facts are peculiarly within the possession and control of the defendant." (*Id.*, quoting *Arista Records, LLC v. Doe*, 604 F.3d 110, 120 (2d Cir. 2010) and citing to *Top*, 2010 WL 3087385, at *4.)  Further, Plaintiffs remind the Court that in denying the initial motion to amend, the Court noted that Plaintiffs only needed to plead "a hint" about the sources of information.  (*Id.*, quoting Tr. 10:9-18.)  Thus, the Plaintiffs argue that they are not required to turn over names of witnesses that have been identified or to otherwise provide evidentiary support at this stage of litigation.  (*Id.*).

With regard to claims that are dependent upon a piercing of the corporate veil theory, Plaintiffs assert that because "Priority [Pay] was a sham business used for Carter's sole benefit[,]" the facts Plaintiffs propose to add will survive a motion to dismiss.  (*Id.* at 4.)  Pursuant to a business status report, Plaintiffs note that the facts demonstrate that Priority Pay was not in good standing for the 10-month period that is in dispute in this matter.  (*Id.*)  Further, according to former employees of Priority Pay and information obtained from public records, such as title records and bankruptcy filings, Carter engaged in siphoning and commingling as follows:

- Carter exercised complete control over Priority's bank accounts, including the accounts in which plaintiffs deposited their funds.  No funds could be distributed from these accounts without Carter's authorization (¶¶ 23-25)[;]

- Carter was the sole member and chief executive officer of Priority and controlled daily decision-making (¶ 50)[;]

- Priority was insolvent at all times relevant to the complaint, that is from at least April, 2009 when the parties' relationship began (¶ 52)[;]

- Priority was undercapitalized as evidenced by Carter's instructions to employees not to use impounded funds on behalf of clients and the fact that impounded funds were used to satisfy pre-existing obligations (¶¶ 24, 51)[;]

- Carter used Priority's funds and funds deposited from plaintiffs to sustain a lavish personal lifestyle marked by expensive cars, luxury apartments, and an upgraded $950,000 residence (¶ 53)[;]

- Carter obtained the new home about the time Marketvision deposited the bulk of the missing money and just before Priority's bankruptcy filing (¶53)[;]

- Carter has been unwilling and unable to explain the disappearance of millions of dollars including funds deposited by plaintiffs (about which he invented varying false excuses) and a $2.3 million deposit made by ADP for sale of Priority's accounts list – a factor supporting an inference that Carter was complicit in the disappearance (¶¶ 25, 30-35, 54)[; and]

- Carter's personal accounts were linked to Priority's accounts (¶ 53)[.]

(*Id.* at 4-5, citing to Proposed Amend. Compl.)

With regard to Priority Pay's insolvency and/or undercapitalization, Plaintiffs note that Priority Pay's insolvency, which led to the April 2010 bankruptcy filing, existed during the period that is relevant to this action. (*Id.* at 6.) Plaintiffs take the position that because information about Priority Pay's financial status may be in the exclusive control of Defendants, Plaintiffs need only demonstrate the plausibility of Priority Pay's insolvency and/or undercapitalization, which would warrant a finding that the corporate veil has been pierced. (*Id.*, citing to *Bd. of Trs. of Trucking Empls. of N. Jersey Welfare Fund, Inc. v. Caliber Auto Transfer, Inc.*, No. 09-6447, 2010 WL 2521091, at * 15 (D.N.J. June 11, 2010) (allowing plaintiffs to proceed because some combination of seven people created the shareholders of a company, who likely would have the requisite information about company ownership and voting rights).) Thus, Plaintiffs argue that its factual allegations concerning "Carter's looting of company assets . . . including funds deposited by plaintiffs at a time of obvious financial distress," are sufficient to pierce the corporate veil. (*Id.*) Plaintiffs further indicate:

It is public record that Carter purchased a million dollar home contemporaneously with plaintiffs' deposit of about a half million dollars in to Priority's account. It is public record that Priority was insolvent at the time. It is public record that

> Carter in this proceeding and in the bankruptcy has never explained the disappearance of plaintiffs' money much less the $2.3 million ADP deposit. In fact, the inability to offer an explanation condemns the company's recordkeeping, highlighting the failure to observe formalities confirmed by the company's business status report. These facts coupled with those derived from statements taken from former employees about Carter's ongoing use of company assets to sustain a lavish lifestyle and his sole access to the accounts at issue establish a plausible case to pierce the veil.

(*Id.* at 6-7.)

For similar reasons, Plaintiffs assert that the fraud in the inducement claim must be permitted, as the Court should find that the corporate veil has been pierced. (*Id.* at 7.) Upon such a finding, Plaintiffs argue that because they allege that Priority Pay made representations that induced them into the Agreement, which representations were made at Carter's directions based on company policy that he implemented, Carter would be personally liable to Plaintiffs. (*Id.*) Plaintiffs note that "[t]he representations covered Priority's administration of payroll processing, policies about holding client deposits, and timely tax filings and payment and plaintiffs have alleged they were false when made, taking them outside the future performance rule." (*Id.*, citing Proposed Amend. Compl. ¶¶ 79-80, 82.) The representations also relate to a bond and insurance coverage that would have protected Plaintiffs, related statements that were made to Plaintiffs and later discovered to be false and other topics unrelated to performance. (*Id.* at 7-8, citing Proposed Amend. Compl. ¶¶ 81-82.) Likewise, because Plaintiffs allege that Carter directed certain misrepresentations that were made at the time of the contract, pursuant to company policy, Plaintiffs contend that the New Jersey Consumer Fraud Act claim has been sufficiently plead. (*Id.* at 10.) Specifically, Paragraph 113 of the proposed Amended Verified Complaint sets forth an example of unconscionable practice under the Consumer Fraud Act, alleging that Defendants used "Plaintiffs' impounded funds to pay other obligations of Priority Pay and Carter[.]" (*Id.* at 10-11.)

13

Having carefully reviewed and considered the parties' legal positions, the Court finds that Plaintiffs have sufficiently plead additional facts to support a piercing of the corporate veil theory.  Indeed, Plaintiffs have properly set forth factual allegations that Carter, as the sole shareholder, exercised dominant control over Priority Pay and allegedly abused the corporation status by "perpetrating a fraud or injustice" and allegedly used Plaintiff's impounded taxes to pay the tax liabilities of other companies, as well as for his personal needs, including the purchase of an expensive residential property.  Taking all reasonable inferences in favor of Plaintiffs, the Court finds that Plaintiffs' allegations that Carter had sole control over Priority Pay's bank accounts, as well as over the company's policies and business practices, including instructions to other employees not to use the impounded funds to pay Priority Pay's taxes and liabilities, would survive a Rule 12(b)(6) motion to dismiss.  Also, to the extent that a significant amount of discovery is likely to be in Defendant's possession, custody and control, such as Priority Pay's financial status and insolvency during the relevant time period, Plaintiffs are entitled to seek that discovery to further develop the record, as they have set forth sufficient factual allegations to support their claims.  *See Prime Capital Grp., Inc.*, 2008 U.S. Dist. LEXIS at * 29.

Further, the Court finds that the six *Craig* factors are not a "rigid test."  Thus, Defendants' assertion that Plaintiffs' motion must be denied because Priority Pay was not insolvent or grossly-undercapitalized when it was first incorporated is misplaced.  Certainly, if a corporation is created with lawful purposes but eventually commits a fraud or other injustice due to recent debt obligations, insolvency or otherwise, which is committed primarily through a dominant shareholder, a finding that the corporate structure has been disregarded can still be properly found.  *See State Capital Title & Abstract Co.*, 646 F. Supp. 2d at 680.  In the instant matter, Plaintiffs' factual allegation that Carter purchased an expensive residential property in

temporal proximity to Plaintiffs' deposit of approximately one-half million dollars into Priority

Pay's account provides a sufficient factual basis at the Rule 12(b)(6) stage for Plaintiffs'

assertion that Priority Pay was "little more than a legal fiction," being used to continue to

perpetuate the alleged breach of contract, fraud in the inducement, conversion and violation of

the New Jersey Consumer Fraud Act.  Indeed, Plaintiffs effectively allege that review of

financial records and statements by former employees and co-workers of Carter provides

evidence to support that Defendant siphoned funds from Priority Pay for his personal benefit and

to the detriment of Plaintiffs.

      Equally unconvincing is Defendant's assertion that the proposed Amended Verified

Complaint fails because Plaintiffs did not identify the former employees by name or verify the

specific documents that support the factual allegations.  Quite simply, this Court has no reason to

believe that the factual assertions Plaintiffs' allege to have received from former employees and

through document review are false or misleading.  Further, the identity of witnesses and

production and authenticity of documents will certainly be disclosed during the pretrial discovery

proceedings of this matter.  Indeed, the applicable standard does not require Plaintiffs to

demonstrate the probability of the allegations and claims, but rather, Plaintiffs need only

demonstrate that it is reasonable for the Court to draw the inference that Defendant is liable.  *See*

*Bell Atl. Corp.*, 550 U.S. at 556.  Thus, the Court finds that the assertions related to Carter's

exercise of complete control over the bank accounts, the inability to disburse funds without his

authorization, his alleged use of Priority Pay funds for his personal, lavish lifestyle and the

assertion that he obtained an expensive house just prior to Priority Pay's bankruptcy filing, all

provide a reasonable basis by which this Court may infer that the factual allegations are true and

may lead to a favorable decision on all claims related to a piercing of the corporate veil theory, therefore surviving a Rule 12(b)(6) motion.

### B.     Count V – Fraudulent Misrepresentation

Next, as discussed above, this Court found granting Defendant's motion to dismiss on Plaintiffs' fraud claim warranted, as Plaintiffs failed to set forth sufficient factual allegations to support their legal conclusions.  As previously noted by this Court, there are two theories of common law fraud that Plaintiffs may plead: (1) material misrepresentation; or (2) nondisclosure.

In order to demonstrate common law fraud, Plaintiffs must demonstrate the following: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity, (3) intent that the other party relies on it, (4) reasonable reliance by the other party, and (5) resulting damages." *Jatras v. Bank of Am. Corp.*, No. 09-3107, 2010 U.S. Dist. LEXIS 135815, at * 15  (D.N.J. Dec. 23, 2010) (citing *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367 (N.J. 1997)).  Pursuant to Federal Rule of Civil Procedure 9(b), when filing a claim for fraud, the asserting party must plead the circumstances allegedly leading to the fraud with particularity, including "the date, time, and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation[,]"which may include assertions of "who made a representation to whom and the general content of the misrepresentation."  *Id.* (quoting *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)); *Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d Cir. 2004).  The remaining fraud elements, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b)

With regard to nondisclosure, it is important to note that under New Jersey law, a confidential or fiduciary relationship may encompass various relationships, including those that

are "legal, natural or conventional in their origin, in which confidence is naturally inspired, or in

fact, reasonably exists. . . . [However,] such a relationship 'does not exist where the parties deal

on terms of equality[.]'"  *Alexander v. CIGNA Corp.*, 991 F. Supp. 427, 437 (D.N.J. 1998)

(quoting *Pascale v. Pascale*, 113 N.J. 20, 33-34 (1988)).  As previously explained by this Court,

> A fiduciary is a person with a duty to act primarily for the benefit of another.  A
> fiduciary relationship implies a condition of superiority of one of the parties over
> the other.  Generally, in a fiduciary relationship, the property, interest or authority
> of the other is placed in the charge of the fiduciary. . . . It extends to every
> possible case in which a fiduciary relationship exists in fact, and in which there is
> confidence reposed on one side and resulting domination and influence on the
> other . . . . There is no invariable rule which determines the existence of a
> fiduciary relationship, the one in the other, but there must exist a certain
> inequality, dependence, weakness of age, of mental strength, business
> intelligence, knowledge of the facts involved, or other conditions, giving to one
> advantage over the other.

*Id.* (citation omitted).  Notably, a breach of fiduciary duty claim requires a party to demonstrate:

"(1) a fiduciary duty, (2) breach of that duty by defendant and (3) damages as a consequence of

that breach."  *Rainbow Apparel, Inc. v. KCC Trading, Inc.*, No. 09-5319, 2010 U.S. Dist. LEXIS

51664, at *22 (D.N.J. May 26, 2010) (citations omitted).

Finally, it is worth noting that this Court has held previously that an individual corporate

officer may be held personally liable if the officer: "(1) commits a tort in his individual capacity;

(2) directs the tortuous act; or (3) participates or cooperates in the commission of the tort."

*Jatras*, 2010 U.S. Dist. LEXIS at * 26.  However, for the corporate officer to be held liable, the

asserting party must demonstrate that the "corporation owed a duty of care to the victim, the duty

was delegated to the officer or director and the officer or director breached the duty of care by

his own conduct."  *Id.* (citation omitted).

Regarding Plaintiffs' fraud claim, Plaintiffs assert that Carter withheld material

information regarding Priority Pay's embezzlement of funds and its inability to use funds that

were impounded from clients.  (Pl.'s Moving Br. 4-5.)  Furthermore, Plaintiffs contend that Defendants failed to correct misrepresentations previously made with regard to the existence of a bond that would protect Plaintiffs against any losses, as well as the process used by Priority Pay to pay client tax liabilities.  (*Id.* at 5.)  Plaintiffs argue that both Priority Pay and Carter, as a surrogate through the piercing the corporate veil doctrine, had a fiduciary duty to disclose the aforementioned information, as the Agreement created an agency relationship and a limited power of attorney.  (*Id.*)  Thus, Plaintiffs argue, Defendants had a duty to disclose the fraudulent conduct and/or correct any previous representations made that were false, which would allow Plaintiffs to respond appropriately.  (*See id.* at 4-5.)

According to Plaintiffs, "[t]he decision to conceal the Figueroa embezzlement and its inevitable consequences emanated from top management, namely Carter.  Indeed, Carter's continuing fabrications after Plaintiffs discovered its tax liabilities had not been paid evidence both his intent to defraud and his orchestration of concealment as a company policy."  (*Id.*)  Also, the proposed Amended Verified Complaint includes factual allegations based on information obtained from former Priority Pay employees that relate to Carter's control over the bank accounts of Priority Pay.  (*Id.*)  In fact, Paragraphs 23 and 103 of the proposed Amended Verified Complaint assert that Carter "exercised complete control over Priority Pay's bank accounts, authorizing and approving any distributions from said accounts . . . [and that] Carter instructed employees and/or agents of Priority Pay not to pay the deposits on behalf of Plaintiffs."  (*Id.* at 6.)  As such, Plaintiffs argue that the information supports their allegations that Carter "exercised control and dominion over the funds in contravention of Plaintiffs' rights thereto. . . .[and,] thus, converted Plaintiffs' property."  (*Id.*)  Of particular relevance are the following allegations:

90.     Carter was aware of the embezzlement and potential negative effects on clients of Priority Pay before December 2009, including the fact that as a result of the embezzlement, Priority Pay would be using funds newly impounded from clients to pay older tax liabilities of other clients.  Carter directed as a matter of company policy that clients not be told about the embezzlement.

91.     Between December 2009 and March 2010 and prior to deposits made by Plaintiffs in late 2009 and early 2010, Carter wrongfully withheld this information from Plaintiffs even though he knew of the embezzlement and effects thereof.  He concealed these facts with knowledge of the fiduciary relationship between Priority Pay and Plaintiffs and while directing Priority Pay to use Plaintiff's [sic] funds to pay obligations of Priority Pay and/or Mr. Carter[.] . . .

96.     Carter did not advise Plaintiffs of the alleged embezzlement by its employees until March 4, 2010. . . .

98.     Carter concealed, and directed Priority Pay to conceal, Priority Pay's failure to hold funds impounded from Plaintiffs' bank accounts in the Priority Pay Tax Impound Account in order to induce Plaintiffs to continue to allow impoundment of funds from their bank accounts.

99.     The limited power of attorney granted by Plaintiffs to Priority Pay imposed a fiduciary duty upon Priority Pay and/or Carter to notify Plaintiffs about the embezzlement.  As an agent of Plaintiffs, moreover, Priority Pay and/or Mr. Carter individually or as Priority Pay's alter ego possessed a duty to disclose material information to Plaintiffs.  In addition, Priority Pay and/or Carter individually or as Priority Pay's alter ego, had a duty to correct and/or update prior representations including misrepresentations about the existence of a bond that would protect Plaintiffs and Priority Pay's ability to use impounded funds to pay current tax liabilities.  Carter, however, concealed the embezzlement and Priority Pay's failure to hold funds impounded from Plaintiffs' bank accounts in the Priority Pay Tax Impound Account.  The cover-up of the embezzlement and the subsequent misrepresentations were made with fraudulent intent.

100.     Plaintiffs justifiably relied upon Carter's concealment and/or misrepresentations. . . . [Plaintiffs] had no reason to question Carter's silence . . . . Carter knew or should have known that Plaintiffs would rely on [same]. . . .

101.     As a result of these false and fraudulent misrepresentations, plaintiffs were damaged in an amount to be determined, . . . including interest and penalties that may be assessed for late filing of returns and non-payment of late payment of deposits.

(Proposed Amend. Compl. ¶¶ 90-91, 96, 98-101, *see also* ¶¶ 88-89, 92-95, 97.)

Defendant, on the other hand, argues that Plaintiffs' nondisclosure fraud claim fails because they did not plead or demonstrate that Carter was obligated to disclose Figueroa's embezzlement, particularly because he was not a party to the Agreement and did not have power of attorney.  (Def.'s Opp'n Br. 11-12.)  As such, Carter contends that Plaintiffs have not cured the deficiencies from their initial Verified Complaint.  (*Id.*)  As for an alleged affirmative misrepresentation by Carter, Defendant argues that Plaintiffs have failed to establish that he "possessed an affirmative obligation to disclose the material facts in question in the first place." (*Id.* at 2.)  Carter notes that the alleged representations were not causally related to the damages sustained by the Plaintiffs, because Plaintiffs only allege facts and representations that took place after the damages allegedly occurred on or after February 12, 2010.  (*Id.* at 2, 12.)  Defendant highlights the fact that the proposed Amended Verified Complaint clearly states "that the last date on which a 'drawdown' occurred was January 28, 2010," which was two weeks prior to Carter's alleged representations.  (*Id.*)

In replying to Defendant's opposition, Plaintiffs contend that Carter's assertions with regard to the ongoing criminal investigation of Figueroa are false, noting that Defendant failed to set forth any legal authority or support and further failed to address the use of impounds subsequent to the embezzlement to pay for other clients' tax liabilities.  (Pl.'s Reply Br. 8.) Likewise, Plaintiffs argue, the fact that Carter was not a party to the Agreement or had power of attorney is not relevant, as the proposed Paragraph 99 alleges that, under Priority Payroll's company policy, Carter had a duty to rectify and/or update misrepresentations regarding the relevant bond and insurance coverage that would have protected Plaintiffs from Defendant's and/or Priority Pay's withdrawals.  (*Id.*)  Plaintiffs assert that it is undisputed that Priority Pay had a fiduciary duty to disclose the information to Plaintiffs and, because Carter directed the

company that was required to disclose same, "Carter is equally liable." (*Id.* at 8-9.)  Plaintiffs

take the position that although the affirmative misrepresentations were made after the relevant

impounds, the misrepresentations themselves "reveal his participation and direction of the cover-

up and fraudulent intent[,]" which led to damages.  (*Id.* at 9.)

Here, as the Court previously found it reasonable to infer that the first four elements of

common law fraud had been properly pled, the Court shall only focus on whether Plaintiffs have

set forth sufficient facts to survive a Rule 12(b)(6) motion to dismiss on the resulting damages

element and/or whether Carter had a duty to disclose the relevant information.  Regarding

Carter's duty to disclose facts surrounding the embezzlement of funds and correcting any

previously made misrepresentations prior to December 2009 through March 2010, the Court

finds that Plaintiffs have plead enough facts to demonstrate that Carter had a fiduciary duty to

disclose, which was allegedly created by way of his individual corporate officer status and his

alleged participation and/or cooperation in the commission of the claimed tort or fraud.  *See*

*Alexander*, 991 F. Supp. at 437; *Jatras*, 2010 U.S. Dist. LEXIS at * 26.  Regardless of whether

Carter was a party to the Agreement or the limited power of attorney, he was allegedly "placed in

charge" of Plaintiffs' property, including the tax impounds and deposits, and was the only person

who could authorize a disbursement from Priority Pay's accounts, which certainly could lead to

the reasonable inference that Carter had a clear advantage over Plaintiffs' property.  *See*

*Alexander*, 991 F. Supp. at 437.

Additionally, the Court finds that it is undeniable that Priority Pay had a fiduciary duty to

protect Plaintiffs' interests pursuant to the Agreement and power of attorney.   It is also clear,

when accepting Plaintiffs' allegations at true, that Carter had control over the relevant bank

accounts, deposits and business practices, which would inherently mean that Carter participated

in the fraud if, in fact, a fraud was committed.  Under such circumstances, it would logically follow that Carter had a duty to disclose the relevant information and correct any misrepresentations, as an individual corporate officer of Priority Pay.  *See Jatras*, 2010 U.S. Dist. LEXIS at  26.  Thus, the Court finds that Plaintiffs allege with sufficient particularity that Carter committed intentional fraud and, as such, it is reasonable to infer that Carter owed Plaintiffs a fiduciary duty to disclose the material information.  Finally, because many of the alleged misrepresentations and failure to correct same occurred during the relevant time period, as set forth throughout the proposed Amended Verified Complaint, the Court finds that the duty to disclose also relates to damages.  Specifically, had Carter disclosed or corrected the relevant information upon receipt or knowledge of same, Plaintiffs could have taken action to avoid additional damages, interest charges and/or late fees that resulted from the deposit of funds into Priority Pay's accounts, which total damages allegedly amount to at least $621,946.39.  (*See* Proposed Amend. Compl. ¶ 101.)

Next, regarding the damages element of a fraud by misrepresentation claim, the Court finds that Plaintiffs' claim has been sufficiently pled and the proposed Amended Verified Complaint satisfies the Rule 9(b) pleading requirements.  First, Count V of the proposed Amended Verified Complaint refers to and incorporates all facts alleging fraud or otherwise against Carter, individually or via a piercing of the corporate veil theory.  As such, Plaintiffs were allegedly damaged by Carter's misrepresentations throughout the entire relevant time period that the Agreement was in effect, in so far as Carter was responsible for making representations on behalf of Priority Pay that the Agreement was being fulfilled, setting forth policy and procedures not to disburse certain funds to pay Plaintiffs' tax liabilities or file outstanding taxes, concealing facts regarding the embezzlement and/or use of Plaintiffs'

22

deposits, as well as all of the alleged resulting damages associated with same, including late tax filing fees and deposit payments.  Thus, although many of the facts asserted specifically under the proposed Count V refer to misrepresentations made after the damages allegedly occurred, the incorporation of the previously asserted facts allows this Court to reasonably conclude that Plaintiffs suffered damages by and through Carter's alleged misrepresentations and fraudulent conduct during the relevant time period.  Further, the misrepresentations that occurred after the date of Plaintiffs' claimed damages are indicative of Carter's alleged fraudulent intent and involvement throughout the relevant time period, which provides Plaintiffs with additional evidence and support for all asserted claims and damages.

Accordingly, based on the factual allegations set forth in the proposed Amended Verified Complaint, the Court finds that Plaintiffs' fraud claim under Count V is "plausible on its face" and would survive a Rule 12(b)(6) motion to dismiss.  Therefore, Plaintiffs' motion to amend Count V of the Verified Complaint is granted.

### C.     Count VI - Conversion

Finally, while the Court has addressed the conversion claim, as it relates to the piercing of the corporate veil theory, because Plaintiffs are now also claiming conversion against Defendant, individually, the Court finds it necessary to set forth and discuss the relevant legal standard below.

"Conversion is the intentional exercise of dominion or control over personal property that seriously interferes with the right of another to control it." *Rainbow Apparel, Inc.*, 2010 U.S. Dist. LEXIS at * 19 (quoting *Pollen v. Comer*, No. 05-1656, 2007 U.S. Dist. LEXIS 46906, at * 31 (D.N.J. June 28, 2007)).  A party asserting a conversion claim must demonstrate: "(1) the existence of property, (2) the right to immediate possession thereof belonging to plaintiff, and (3)

the wrongful interference with that right by defendant." *Corestar Int'l PTE. Ltd. v. LPB Commc'ns, Inc.*, 513 F. Supp. 2d 107, 127 (D.N.J. 2007) (citing *Carton v. Choice Point,* 450 F. Supp. 2d 489, 501 (D.N.J. 2006)); *Davis v. Connolly*, No. 09-4629, 2010 U.S. Dist. LEXIS 13175, at * 5 (D.N.J. Feb. 11, 2010) (citation omitted).  Stated differently, the party must prove "(1) that the alleged offender assumed and exercised the right of ownership over the party's goods or chattels without permission, and (2) excluded the owner from exercising dominion over them." *Rainbow Apparel, Inc.*, 2010 U.S. Dist. LEXIS at * 19 (internal citations and quotations omitted).

Regarding the conversion claim, Plaintiffs argue that "[i]ndividual liability adheres under the CFA when corporate officers have participated in the wrongdoing, corporate officers qualifying as a 'person' under the Act."  (Pls.' Reply Br. 11, citing *Allen v. V & A Bros., Inc.*, 414 N.J. Super. 152, 156 (App. Div. 2010); N.J.S.A. § 56:8-1d.)  Thus, Plaintiffs take the position that Carter is liable for conversion as an individual and also under a piercing of the corporate veil theory.  (*Id.* at 9.)  According to Plaintiffs, Carter had sole authority over the accounts that are the subject of this matter and he directed the use of Plaintiffs' funds to pay his own personal obligations, as well as those of Priority Pay.  (*Id.*)  Plaintiffs highlight the temporal proximity between the deposit and disappearance of Plaintiffs' funds with Carter's purchase of his new, expensive residence.  (*Id.*)  Plaintiffs further argue that Carter's false explanations with regard to the disappearance of the funds are evidence that he knew of and was responsible for the misuse and conversion of the funds.  (*Id.* at 9-10, quoting *Sensale v. Applikon Dyeing & Printing Corp.*, 12 N.J. Super. 171, 175 (App. Div. 1951) ("a director or officer who commits the tort or who directs the tortious act to be done, or participates or cooperates therein, is liable to third persons injured thereby, even though liability may also attach to the corporation for the tort.");

*Charles Bloom & Co. v. Echo Jewelers*, 279 N.J. Super. 372, 381 (App. Div. 1995) ("Any

corporate officer, or director who participates by aid, instigation, or assistance in a conversion, is

liable."); *Robsac Indus., Inc. v. Chartpak*, 204 N.J. Super. 149, 156 (App. Div. 1985)

("Corporate officers are liable to persons injured by their own torts, even though they were

acting on behalf of the corporation and their intent was to benefit the corporation, even though

liability also attaches to the corporation, and even though they derive no personal benefit."

(internal citations omitted)).)

Defendant, however, disagrees with Plaintiffs' position, asserting that Plaintiffs' bold,

unsupported legal conclusions that he "personally, as officer of the company, had a fiduciary

duty to Marketvision stemming from the Tax Impounding Agreement with Priority Pay and/or

the power of attorney which allowed for the impounding from Marketvision's account" warrants

denial of Plaintiffs' motion, as any duty would be that of Priority Pay, stemming directly from its

contractual obligations to Plaintiffs.  (Def.'s Opp'n Br. 9-10.)  Similarly, Defendant argues that

there is no new evidence asserted in the proposed Amended Verified Complaint, which supports

the assertion that Carter converted the impounded funds, particularly because payments from

Plaintiffs' accounts were made pursuant to the Agreement, to which Defendant was not a party.

(*Id.* at 13.)  Defendant therefore argues that Plaintiffs' assertion "that unnamed former

employees of the company stated that Mr. Carter controlled and/or directed the disbursement of

all funds from the Tax Impound Account" are unsupported and would not survive a motion to

dismiss.  (*Id.*)

Here, the Court is persuaded that Plaintiffs' newly added factual allegations to the

proposed Amended Verified Complaint would survive a 12(b)(6) motion.  According to

Plaintiffs, former employees who worked with Carter have stated that Carter siphoned funds for

his personal, individual use.  Thus, Plaintiffs have a reasonable foundation for asserting that

Carter used their deposits to, at the very least, purchase an expensive, residential property,

particularly when considering the temporal proximity of the deposit and the purchase of the

property.  Since only Carter had the authority to disburse Plaintiffs' funds, clearly it is reasonable

to find that he intentionally exercised dominion or control over Plaintiffs' property, thereby

prohibiting Plaintiffs' access to same.  Likewise, because Carter was the sole corporate officer,

he would also be liable for the use of Plaintiffs' funds to pay off Priority Pay's other debts and

obligations, as asserted in the proposed Amended Verified Complaint.  Thus, for the same

reasons discussed under Section II.B of this Letter Opinion and Order, as Carter had a fiduciary

duty to protect Plaintiffs' interests, as expressed in the Agreement, Carter may be held personally

liable for any torts committed against Plaintiffs, by and through Priority and Carter's individual

misconduct.  While the Court agrees that additional facts are likely necessary for Plaintiffs to

prevail in a conversion claim against Carter, individually, the Court finds that good cause

warrants permitting Plaintiffs to seek such discovery during the pretrial proceedings.

## III.   <u>CONCLUSION</u>

For the reasons discussed above, Plaintiffs' motion to amend the Verified Complaint is

**GRANTED**.  The amended Verified Complaint shall be filed by **May 6, 2011**.  Defendant shall

answer, move or otherwise respond, thereafter, in accordance with the applicable rules.


 s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES MAGISTRATE JUDGE**